UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

MUJAHID FARID,

                          Plaintiff,

                                                     01 Civ. 8292 (PKC)

               -against-

                                                     MEMORANDUM
                                                     AND ORDER

DR. I. ELLEN, et al.,

                          Defendants.

------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

          Plaintiff Mujahid Farid brings this action pursuant to 42 U.S.C. § 1983, al-

leging that he was deprived of due process of law guaranteed by the Fourteenth Amend-

ment, suffered retaliation for the exercise of his First Amendment rights, and was de-

prived of medical care in violation of the Eighth Amendment.[1]  In addition to these fed-

eral claims, plaintiff asserts that the conduct of defendants violated the New York consti-

tution and various statutes.  This Court has supplemental jurisdiction over these state

claims under 28 U.S.C. § 1367.

          This action was commenced on September 5, 2001, and discovery is now

closed.  Defendants have moved for summary judgment on all of plaintiff's claims, and

plaintiff opposes defendants' motion and has offered his own motion for summary judg-

---

[1] Plaintiff is no stranger to civil litigation in federal or state court.  See, e.g., Farid v. Smith, 850 F.2d 917
(2d Cir. 1988); Farid v. Scully, 1985 U.S. Dist. LEXIS 23075 (S.D.N.Y. Jan. 29, 1985); Farid v. Travis, 17
A.D.3d 754 (3d Dep't 2005); Farid v. Coombe, 236 A.D.2d 660 (3d Dep't 1997); Farid v. Russi, 217
A.D.2d 832 (3d Dep't 1995); Farid v. Smith, 152 A.D.2d 1016 (4th Dep't 1989); Farid v. State, 112 A.D.2d
342 (2d Dep't 1985).

ment. For each claim here at issue, I have first considered defendants' motion for summary judgment and then, if necessary, plaintiff's motion for summary judgment. Where there is a factual issue in dispute, I draw all reasonable inferences in favor of the non-movant. For the reasons discussed below, I grant defendants' motion for summary judgment and deny plaintiff's motion for summary judgment.

Facts

For the purposes of these motions, I have accepted as true plaintiff's version of the facts and such other facts offered by defendants that are not disputed by plaintiff. In 1978, plaintiff was convicted in state court on two counts, manslaughter in the first degree and attempted murder in the first degree. (Def. Ex. B at 10) Plaintiff received a sentence of fifteen years to life in prison, and has been denied parole several times. (Def. Ex. B at 10)

From December 1997 to June 2000, plaintiff was incarcerated at Woodbourne Correctional Facility ("WCF"), a state prison in Woodbourne, New York. (Farid Dep. at 40) During this period, plaintiff was a member of an inmate organization known as the Long Termers Committee ("LTC"). (Farid Aff't ¶ 20) The New York Department of Corrections ("DOCS") recognized and approved the existence of this organization. (Farid Aff't ¶ 19) However, the organization violated DOCS policy in August 1999 by contacting and inviting various political and community leaders to the prison without first seeking approval of defendant John Keane, Superintendent of WCF, or other appropriate DOCS official. (Farid Aff't ¶ 13; Def. Ex. D)

On April 6, 2000, non-defendant corrections officers at WCF conducted a random search of plaintiff's cell but noted no contraband on their search report. (Def. Ex. B at 38; Def. Ex. C at 55) While conducting a search of a cell of a different inmate, plaintiff maintains that these officers discovered a copy of an LTC pamphlet entitled "The Politics of Parole". (Def. Ex. B at 38) This pamphlet describes the circumstances of several inmates' incarceration – including plaintiff's – and criticizes the parole policies that have denied these individuals parole several times. (Farid Aff't ¶ 8; Def. Ex. B at 5-17) DOCS did not approve the publication and distribution of this material, as it maintains was required by regulations. (Def. Ex. B at 34, 38)

On April 7, 2000, while plaintiff was outside his cell, other non-defendant corrections officers conducted another search of plaintiff's cell and confiscated copies of "The Politics and Parole", as well as letters and envelopes addressed to several civilians. (Farid Aff't ¶ 7; Def. 56.1 ¶ 3) These non-defendant officers then placed plaintiff in disciplinary confinement. (Farid Aff't ¶ 7; Def. 56.1 ¶ 3) On April 8, 2000, plaintiff received an Inmate Misbehavior Report ("IMR") written by one of the officers alleging that plaintiff had committed several disciplinary violations by possessing, without authorization, copies of the pamphlet, letters and envelopes. (Farid Aff't ¶¶ 8-9; Def. Ex. B at 1, 24) Specifically, the IMR charged plaintiff with possessing contraband, attempting to smuggle contraband to individuals outside the prison, soliciting goods or services and unauthorized legal assistance. (Farid Aff't ¶ 11; Def. Ex. B at 1, 5-17)

On April 12, 2000, then-Deputy Superintendent of Administration Thomas Miller, a defendant in this action, commenced a disciplinary hearing on the charges set forth in the April 8, 2000 IMR. (Farid Aff't ¶¶ 5, 15; Def. Ex. C at 41) Plaintiff was pro-

provided an opportunity to choose an individual to assist him in the hearing, and he chose Corrections Counselor and non-defendant Charles Davis. (Farid Aff't ¶ 5; Def. Ex. C at 42) Shortly after the hearing began, plaintiff requested that defendant Miller recuse himself from the hearing. (Farid Aff't ¶ 16; Def. Ex. C at 44-45) Plaintiff argued that the fact that defendant Miller worked for defendant Keane prevented Miller from conducting the disciplinary hearing in a neutral and fair manner. (Farid Aff't ¶ 16; Def. Ex. C at 44-45) Plaintiff further suggested that defendant Keane had targeted him because he had invited state legislators to visit the prison the previous August. (Farid Aff't ¶¶ 13-14; Farid Dep. at 97, 101-09; Pl. Ex. 3) Defendant Miller denied plaintiff's request, stating that defendant Keane had never directed Miller to target plaintiff in any such manner. (Farid Aff't ¶ 17; Def. Ex. C at 46-47)

During the hearing, plaintiff requested that defendant Miller read aloud and in full each of the rules pertaining to the charges. (Farid Aff't ¶ 28; Def. Ex. C. at 46) Although defendant Miller called this request reasonable, he later refused to read the rules aloud. (Farid Aff't ¶ 29; Def. Ex. C. at 48-49) In discussing the charge of attempted smuggling of contraband materials, defendant Miller noted that the LTC by-laws expressly prohibited such conduct. (Def. Ex. C at 51)

At the conclusion of the hearing on April 13, 2000, defendant Miller found plaintiff guilty of the possession of contraband, soliciting goods or services and attempting to smuggle contraband, but defendant Miller dismissed all of the other charges. (Farid Aff't ¶¶ 5, 33; Def. Ex. C at 77-78) Miller imposed sanctions against plaintiff that included confinement for ninety days in the Special Housing Unit ("SHU"), a loss of ninety days of various privileges and a loss of ninety days of "good time". (Farid Aff't ¶

5; Def. Ex. B at 35)  Plaintiff's disciplinary history maintained by DOCS indicates that he served the SHU portion of the punishment between April 7, 2000, and July 6, 2000. (Def. Ex. E)

In June of 2000, plaintiff appealed the disciplinary charges to defendant Glenn Goord, the DOCS Commissioner.  (Farid Aff't ¶ 35; Def. Ex. B at 544-47)  Acting on behalf of defendant Goord, defendant Donald Slesky, the DOCS Director of SHUs, dismissed the charge of soliciting goods or services but did not modify the sanction against plaintiff imposed by defendant Miller.  (Farid Aff't ¶ 36; Def. Ex. B at 550-51)

Wholly separate from the disciplinary charges, plaintiff complains of deliberate indifference in his medical treatment.  In April 2000, plaintiff contends that he "was in the process of being cleared for antiviral drug treatment" for chronic Hepatitis C virus ("HCV").  (Pl. Exs. 17-19; Farid Aff't ¶¶ 5, 40; Def. 56.1 ¶ 23)  On June 21, 2000, plaintiff was transferred from WCF to the Clinton Correctional Facility ("CCF") in Dannemora, New York.  (Farid Aff't ¶ 39; Farid Dep. at 40)  Plaintiff argues that this transfer violated DOCS medical guidelines and that CCF failed to continue his HCV treatment after the transfer.  (Farid Aff't ¶¶ 41-42)  A liver biopsy was performed on plaintiff in September 2000.  (Farid Aff't ¶ 5; Def. 56.1 ¶ 27)

In late 2000 and early 2001, plaintiff complained to CCF personnel and DOCS officials that he was not receiving follow-up treatment for HCV.  (Pl. Ex. 34)  Defendant Dr. Lester Wright, a Deputy Commissioner and Chief Medical Officer of DOCS, assured plaintiff that he would soon receive such treatment.  (Pl. Ex. 34)  However, in May 2001, defendant Wright wrote to plaintiff and stated that it was his understanding that plaintiff was already receiving antiviral HCV treatment.  (Pl. Ex. 32)  When plaintiff

responded that this was not true, defendant Wright wrote to inform plaintiff that he first needed to enroll in DOCS' Alcohol and Substance Abuse Treatment ("ASAT") Program. (Farid Aff't ¶¶ 49-52; Pl. Exs. 33, 37)  Plaintiff disputed the necessity of his completing ASAT because he had already done so in June 1990, nearly a decade earlier.  (Farid Aff't ¶¶ 52-55)  Defendant John Mitchell, a nurse administrator at CCF, completed one chart dated August 30, 2000, which indicated that plaintiff had completed ASAT in June 1990. (Pl. Exs. 46-48)  However, in July and August of 2001, defendant Mitchell completed other charts indicating that plaintiff had requested, but not completed, the ASAT program.  (Pl. Exs. 39-45)  The evidence in the record does not indicate whether inmates must complete ASAT within a certain time period before receiving HCV treatment.

In September 2001, plaintiff was transferred from CCF to a new facility, the Franklin Correctional Facility ("FCF") in Malone, New York.  (Farid Aff't ¶ 58)  In October of 2001, plaintiff was diagnosed with diabetes mellitus.  (Farid Aff't ¶ 76)  In December 2001, medical staff at FCF initiated a combination drug regimen for plaintiff to treat HCV.  (Farid Aff't ¶¶ 60-61)  This treatment was later interrupted due to supply problems at the FCF infirmary.  (Farid Aff't ¶¶ 65-66)  In September of 2003, plaintiff inquired of medical staff about his interrupted treatment for HCV.  (Farid Aff't ¶ 67) This staff informed plaintiff that he would first need to complete ASAT, but then provided the separate explanation that plaintiff did not respond positively to the prior treatment regime.  (Farid Aff't ¶¶ 68-69, 71)  Plaintiff disputed both of these reasons and argued that his prior treatment regime involved either incorrect drugs or dosages.  (Farid Aff't ¶¶ 70, 73-74)  Plaintiff believes – based on a "confidential source" that he has not disclosed to this Court – that his treatment was discontinued at various points in retalia-

tion for his complaints to DOCS officials that has culminated in the present lawsuit.

(Farid Aff't ¶ 75)

Plaintiff asserts six claims: (1) Due Process and state law violations based on the filing and conduct of a disciplinary hearing; (2) First Amendment violations based on disciplinary sanctions levied against him for constitutionally protected conduct; (3) constitutional and state law violations based on seizure of his documents; (4) constitutional violations arising out of his transfer amid medical treatment; (5) constitutional and state law violations arising out of deprivation of "follow-up medical treatment"; and (6) constitutional and state law violations arising out of a transfer of plaintiff that disrupted a scheduled trial.  (Compl. ¶¶ 99, 101, 103, 105, 107, 109) Plaintiff asserts all of these claims against all nine defendants.  Defendants moved for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(b), and in a Memorandum and Order, I dismissed plaintiff's third and sixth causes of action without prejudice. See Farid v. Ellen, 2003 WL 23018805, *5 (S.D.N.Y. Dec. 23, 2003).  Defendants have now moved for summary judgment on all remaining claims, and plaintiff has also offered his own motion for summary judgment on all remaining claims.

Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each ma-

terial element of his claim or defense, demonstrating that he or she is entitled to relief. A fact is material if it "might affect the outcome of the suit under the governing law . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed. R. Civ. P. 56(e). In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (quotations and citations omitted); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). In reviewing a motion for summary judgment, the court must scrutinize the record, and grant or deny summary

judgment as the record warrants.  Fed. R. Civ. P. 56(c).  In the absence of any disputed material fact, summary judgment is appropriate.  Id.  "[W]hen the plaintiff proceeds pro se, as in this case, a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations."  Jacobs v. Ramirez, 400 F.3d 105, 106 (2d Cir. 2005).  See also Muntaqim v. Coombe, 366 F.3d 102, 105 n.3 (2d Cir. 2004), cert. denied, 125 S.Ct. 480 (2004) (stating that pro se pleadings should be "read liberally and interpret[ed] to raise the strongest arguments that they suggest").  Nevertheless, proceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment, and a pro se party's "bald assertion," unsupported by evidence, is not sufficient to over-come a motion for summary judgment.  See S.E.C. v. Save the World Air, Inc., 2005 U.S. Dist. LEXIS 28313, *26 (S.D.N.Y. Nov. 16, 2005) (citing Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)).  When cross-motions for summary judgment are made, the stan-dard is the same as that for an individual motion.  See Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001).

Discussion

I.      Due Process and State Law Claims Regarding Disciplinary Hearing

            Plaintiff alleges that defendants, persons acting under color of state law, denied him procedural due process in the course of the April 12-13, 2000 disci-plinary hearing, thereby giving rise to a claim under section 1983.  (Compl. ¶ 99) Plaintiff also asserts that these alleged acts violate "the laws of the State of New York and its statutes."  (Compl. ¶ 99)  Defendants have moved for summary judgment on the grounds that the punishment imposed during that hearing was insufficient to im-

plicate plaintiff's liberty interest, as protected by the Fourteenth Amendment. (Def. Mem. of Law at 11) In the alternative, defendants argue that, even if this Court concludes that the punishment implicated plaintiff's liberty interest, plaintiff received all of the process that he was due. (Def. Mem. of Law at 12-13)

"A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" Id. (quoting Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir. 1998)). In Palmer, the Second Circuit held that SHU confinements of less than 101 days and "under normal SHU conditions may not implicate a prisoner's liberty interest." Id. at 65 (citing Sealey v. Giltner, 197 F.3d 578, 589 (2d Cir. 1999)). However, the Court also noted that "SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of Sealey or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." Id.

Upon concluding that a disciplinary hearing implicated a prisoner's liberty interest, a court may determine whether the hearing provided sufficient process due to the prisoner. "[W]hile prisoners are entitled to the protection of procedural

due process in the context of a disciplinary hearing, 'the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed.'" Taylor v. Rodriguez, 238 F.3d 188, 192 (2d Cir. 2001) (quoting Wolff v. McDonnell, 418 U.S. 539, 556 (1974)). Although the Second Circuit has stated that the "full panoply of rights due a defendant during a criminal trial are not available in a prison disciplinary hearing," it also recognized that the Supreme Court requires that "'the minimum requirements of procedural due process appropriate for the circumstances . . . be observed.'" Id. (quoting Wolff, 418 U.S. at 558). Specifically, "due process requires that a prisoner be given specific factual notice of the charged misbehavior for which he faces discipline, a summary of the substance of any adverse evidence reviewed ex parte by the hearing officer, and a statement of reasons for the discipline imposed." United States v. Abuhamra, 389 F.3d 309, 326 (2d Cir. 2004).

        The first ground asserted in defendants' motion provides ample reason to grant summary judgment to defendants. The punishment imposed on plaintiff included 90 days in SHU, 90 days loss of various prison privileges and a loss of 90 days of good time credits. (Farid Aff't ¶ 5; Def. Ex. B at 35) After a full opportunity to conduct discovery, plaintiff has come forward with no evidence that his confinement in SHU for 90 days was more severe than normal or in any way atypical. In addition, plaintiff has represented to this Court – and defendant agrees – that plaintiff has never been eligible for good time credits because he is serving a life sentence. (Farid Letter of May 28, 2005; Nowve Letter of June 8, 2005) His "loss" of these credits has no impact on the length of his incarceration, and therefore does not implicate his liberty

interest.  See Curtis v. Pataki, 1997 WL 614285, *3 (N.D.N.Y. Oct. 1, 1997) (holding that an inmate serving a life sentence does not have a liberty interest in good time credits).  Finally, the last portion of plaintiff's punishment – the loss of privileges – was less severe than the punishment imposed on the plaintiff in Sealey, which the Second Circuit held insufficient to implicate a liberty interest.  197 F.3d at 587, 589-90 (noting that plaintiff had alleged that he was confined to his cell for twenty-three hours a day, limited to three showers a week and lost various privileges).  There is no genuine issue of material fact with regard to the question of whether plaintiff's liberty interest had been implicated, and defendants are entitled to judgment as a matter of law on this ground.

However, even if plaintiff's liberty interest had been implicated by the disciplinary hearing, plaintiff received all of the process that he was due.  Plaintiff argues that the April 12-13, 2000, disciplinary hearing violated his due process rights in two respects.  First, plaintiff contends that he received insufficient notice of the allegations against him because the IMR neither specified his alleged conduct nor cited any of the LTC by-laws that he allegedly violated.  (Farid Aff't ¶¶ 12, 19-22)  However, the IMR contained a lengthy description of what the officers allegedly had found in plaintiff's cell, and it also listed those disciplinary rules that such possession violated.  (Def. Ex. B at 1, 24-25)  It is true that the IMR did not mention any LTC by-laws, but, contrary to plaintiff's assertion, none of the disciplinary charges was based on a violation of these by-laws.  (Farid Aff't ¶ 19-22; Def Ex. B at 1)  Rather, the charges were based on specific disciplinary rules:

> [Rule] 105.12 unauthorized organizational materials[; Rule] 110.21 unau-
> thorized papers[; Rule] 113.23 contraband items not listed in rules 113.10

through 113.22[; Rule] 114.10 Attempt to smuggle[; Rule] 180.17 unau-
thorized legal assistance[; Rule] 103.20 soliciting goods or services[;
Rule] 180.11 Inmates shall comply with and follow the guidelines given
by staff regarding facility correspondence.

(Def. Ex. B at 1)  In discussing Rule 105.12 with plaintiff during the course of the hear-

ing, Miller simply noted that plaintiff's intended distribution of contraband materials also

violated an LTC by-law.  (Def. Ex. C at 51)  However, the mere fact that the hearing offi-

cer mentioned the LTC's by-laws during the hearing does not transform those by-laws

into a ground for discipline.

Second, plaintiff argues that defendant Miller should have recused

himself from the April 12-13, 2000, disciplinary hearing because of his professional

association with Superintendent Keane.  (Farid Aff't ¶¶ 16-17)  The Second Circuit

has stated that due process requires a prison disciplinary hearing to be impartial.  See

Russell v. Selsky, 35 F.3d 55, 59 (2d Cir. 1994) (citing McKinnon v. Patterson, 568

F.2d 930, 934 n.3 (2d Cir. 1977), cert. denied, 434 U.S. 1087 (1978)).  However, the

Court also recognized that "the special characteristics of the prison environment

[make] it . . . possible for the impartiality of [hearing officers] to be encumbered by

various conflicts of interest that, in other contexts, would be adjudged of significant

magnitude to violate due process."  Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir.

1989) (citing Cleavinger v. Saxner, 474 U.S. 193, 203-04 (1985)).  For example, the

Court affirmed the grant of summary judgment dismissing a section 1983 claim by an

inmate who challenged a hearing officer's dual status as the officer reviewing the ini-

tial IMR and serving as the hearing officer, given the absence of both a clearly estab-

lished right and any evidence of actual bias.  See Russell, 35 F.3d at 60.

Plaintiff has come forward with no evidence from which a reasonable jury could conclude that defendant Miller was actually biased. There is no evidence that he was involved in the confiscation of plaintiff's materials. Plaintiff contends that defendant Keane, the Superintendent, has targeted him ever since plaintiff invited – without seeking any authorization or permission from the appropriate officials – various civilians to visit the prison. (Compl. ¶¶ 36-37; Farid Aff't ¶¶ 37-38) Although plaintiff conceded during the disciplinary hearing that defendant Keane had not directed defendant Miller to "go against" plaintiff, he maintained that it would be "difficult if not impossible for [Miller] to resist" the wishes of Keane. (Def. Ex. C at 45-47) However, such mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587 (1986)). See also Anderson, 477 U.S. at 249-50 (noting that summary judgment should be granted if the evidence is "merely colorable" or "not significantly probative").

Lacking any evidence of defendant Keane's personal involvement in the hearing other than his providing responses to plaintiff's interrogatories, plaintiff may not maintain a claim under section 1983 against defendant Keane. Although plaintiff's allegations as they pertain to this claim involve only Keane and Miller, he has asserted the cause of action against all nine defendants. (Compl. ¶ 99) Plaintiff does not plead a separate claim based on alleged violations of state law, and he has not offered any reason why a different result would obtain under state due process

law rather than federal law.  I grant defendants' motion for summary judgment on the first claim as it pertains to all nine defendants.

II.     First Amendment Claim

Plaintiff argues that defendants retaliated against him in response to his exercise of his free speech right as protected by the First Amendment to the U.S. Constitution.  (Compl. ¶ 101; Pl. Mem. of Law in Opp'n at 5-11)  In moving for summary judgment, defendants argue that plaintiff's claim is barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), and its progeny.  (Def. Mem. of Law at 9-10)  Defendants have since abandoned these grounds for summary judgment because they admittedly misunderstood the circumstances of plaintiff's incarceration, and thus their <u>Heck</u> argument is inapposite.[2]  (Nowve Letter of June 8, 2005 at 1)  Plaintiff also moved for summary judgment on the issue of liability as to all defendants in this action.  (Farid Aff't ¶ 2)

"[T]o sustain a First Amendment retaliation claim, a prisoner-plaintiff must demonstrate the following: "'(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'"

Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (quoting Dawes v. Walker, 239

F.3d 489, 492 (2d Cir. 2001), overruled on other grounds, Swierkiewicz v. Sorema

N.A., 534 U.S. 506 (2002)).  If the plaintiff meets his burden of proof in showing

these elements, the burden shifts to the defendant to demonstrate by a preponderance

of the evidence that they would have disciplined the plaintiff "even in the absence of

the protected conduct."  See Mount Healthy Sch. Dist. v. Doyle, 429 U.S. 274, 287

(1977).  As a result, state action taken for both proper and improper reasons may be

upheld if the action would have been taken based on the proper reasons alone.  See

Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).  The Second Circuit has recog-

nized the ease with which claims of retaliation by prisoners can be fabricated and has

therefore stated that a court must examine prisoners' claims of retaliation with "skep-

ticism and particular care."  See Dawes, 239 F.3d at 491.

  Neither party has demonstrated that it is entitled to judgment as a mat-

ter of law on plaintiff's First Amendment claim.  Therefore, both motions for sum-

mary judgment are denied.  The briefs submitted by the parties have left many ques-

tions unanswered, and this Court will grant the parties leave to renew their motions

for summary judgment, applying the facts to the proper legal standard.  In doing so,

plaintiff should explain precisely what speech or conduct he argues was constitution-

---

[2] Specifically, defendants argued that plaintiff's § 1983 claims for money damages due to constitutional violations were barred by Edwards v. Balisok, 520 U.S. 641 (1997) (following Heck v. Humphrey, 512 U.S. 477 (1994)).  (Def. Mem. of Law at 9-10)  The Edwards Court held that a prisoner deprived of "good-time credits" could not seek relief under § 1983 until he had exhausted his remedies via the prison appeal process and the writ of habeas corpus.  See id. at 644-48.  However, defendants here erroneously believed that plaintiff was eligible for good-time credits.  When plaintiff informed defendants and this Court that he was not eligible because he was serving a life sentence, defendants withdrew their arguments based on Heck and Edwards.  (Nowve Letter of June 8, 2005, at 1)  In doing so, defendants did not request additional time to supplement their briefs, but instead "adhere[d] to their position that this cause of action is dismiss-ible on other grounds," none of which directly controlled the outcome of plaintiff's First Amendment

ally protected and precisely what adverse action he suffered.  In their motion, defendants should explain the application, if any, of <u>Shakur v. Selsky</u>, 391 F.3d 106, 113 (2d Cir. 2004), to this case.  Defendants should serve plaintiff anew with the notice required by Local Rule 56.2.

III.   Alleged Constitutional Violations Regarding Transfer Amid Medical Treatment

Plaintiff's fourth claim against defendants is that they violated his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution by transferring him from WCF to CCF while he was "undergoing medical treatment and awaiting a prescribed medical procedure."  (Compl. ¶ 105)  Specifically, plaintiff contends that medical staff at WCF were treating him for HCV and that he was awaiting a liver biopsy at Albany Medical Center.  (Compl. ¶¶ 55-57)  In his fifth claim, plaintiff alleges that defendants deprived him of follow-up medical treatment after the transfer.  (Compl. ¶ 107)  Plaintiff asserts that this alleged deprivation violated the Eighth and Fourteenth Amendments, as well as rights guaranteed by the state constitution and state statutes.  (Compl. ¶ 107)

In moving for summary judgment, defendants argue that plaintiff can neither show that his condition constituted a "sufficiently serious medical need" nor that defendants displayed a "conscious disregard" for plaintiff's safety, each of which is a required element of an Eighth Amendment claim.  Plaintiff has also moved for summary judgment on the issue of liability as to all defendants in this action.  (Farid Aff't ¶ 2)  In

---

claim.  (<u>Id.</u> at 1 n.1)

such circumstances, a court may search the record for any evidence to support the elements of a claim and grant summary judgment to the non-movant in the absence of such evidence. See Travelers Cas. & Sur. Co. v. Gerling Global Reinsurance Corp. of Am., 419 F.3d 181, 190-191 (2d Cir. 2005) ("Summary judgment in favor of the non-movant can be particularly appropriate where, as here, the factual record has been 'fully developed.'"); Coach Leatherware Co. v. AnnTaylor, Inc., 933 F.2d 162, 167 (2d Cir. 1991). As a result, it is appropriate for this Court to consider the question of whether the plaintiff has come forward with any evidence from which a reasonable jury could conclude that he has satisfied the elements of an Eighth Amendment claim on which he has moved for summary judgment.

Plaintiff asserts in his fifth claim that he was deprived of medical treatment after his transfer in violation of the Eighth Amendment. (Compl. ¶ 107) The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const., Amdt. 8. See Farmer v. Brennan, 511 U.S. 825 (1994) (holding that the Eighth Amendment is applicable to the treatment and conditions of confinement of prison inmates). The Supreme Court has applied this prohibition to the states through the Due Process Clause of the Fourteenth Amendment. See Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 463, 473-474 (1947).

When a prisoner-plaintiff sues under section 1983 and alleges that state officials deprived him of medical care in violation of the Eighth and Fourteenth Amendments, he must show that "the defendant acted with 'deliberate indifference to his medical needs.'" Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000). This standard has both an objective prong and a subjective prong. See Johnson v. Wright, 412 F.3d 398,

403 (2d Cir. 2005). "First, the prisoner must prove that the alleged deprivation of medical treatment is, in objective terms, 'sufficiently serious' - that is, the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" Id. (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)). "Second, the prisoner must prove that the charged official acted with a 'sufficiently culpable state of mind.'" Id. (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)). This subjective prong requires that the prisoner prove that the charged official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Mere negligence on the part of defendant officials is insufficient for the second prong. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). See also Cuoco v. Moritsugu, 222 F.3d 99, 107 (2d Cir. 2000) ("Mere medical malpractice is not tantamount to deliberate indifference.").

A. Sufficiently Serious Need

"A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" Harrison, 219 F.3d at 136 (quoting Chance, 143 F.3d at 702). Although "there is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition," the Second Circuit has identified several relevant factors. Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003). Specifically, a court should inquire about "whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' . . . whether the medical condi-

tion significantly affects daily activities, and . . . the 'existence of chronic and substantial pain.'" Id. "When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone" in evaluating the objective prong. Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003) (emphasis in original). In doing so, a court may consider the "absence of adverse medical effects or demonstrable physical injury" associated with such delay or interruption. Id. at 187.

        For purposes of defendants' motion, I will assume that HCV qualifies as a "serious medical condition" and that some conduct – such as transferring plaintiff twice and refusing to provide plaintiff antiviral drug treatment – constituted a delay in treatment. (Farid Aff't ¶¶ 39, 46, 49; Farid Dep. at 40; Pl. Exs. 32, 37) Since plaintiff does not allege that defendants caused him to develop HCV but rather that they failed to treat this condition sufficiently quickly, the issue is whether this delay and associated deprivation of medical treatment for this condition satisfies the objective prong of the Eighth Amendment analysis. See Smith, 316 F.3d at 185. Despite plaintiff's detailed record of various alleged lapses by defendants in treating his condition, plaintiff has come forward with no evidence of how this alleged delay exacerbated his condition or worsened his prognosis for effective treatment. There appears to be no dispute in the case that plaintiff had suffered liver injury as of September 2000. However, the only medical expert in this case, Dr. Mark Korsten, concluded that this injury could be the result of either plaintiff's HCV or his diabetes, which both parties appear to acknowledge is unrelated to the HCV. (Def. Ex. H at 2) Dr. Korsten noted that the standard of care for HCV patients is to treat

them with a "dual therapy" of interferon 2A or 2B and ribaviran for 12 weeks, and then

determine whether such therapy has effected a "significant viral load reduction." (Def.

Ex. H at 3) Although plaintiff received this treatment for less than 12 weeks, Dr. Korsten

concluded that there were no indications in the record that plaintiff has actually been

harmed by the failure to eradicate HCV from his body.

> Over the period reviewed, the plaintiff remained asymptomatic and bio-
> chemical indices of livery injury remained within normal limits . . . .
> [W]ith a reasonable degree of medical certainty, I can state that the plain-
> tiff has not been harmed in failing thus far to eliminate the Hepatitis C vi-
> rus. There is no evidence in the reviewed records of functional impair-
> ment of his liver and it is highly unlikely that his liver pathology will be
> associated with future morbidity or mortality.

(Def. Ex. H at 3) Based on this evidence, no reasonable jury could conclude that the al-

leged delay in plaintiff's medical treatment caused any harm to him that would be action-

able under the Eighth Amendment.

## B. Conscious Disregard

Even assuming that the alleged delay caused objective harm to plaintiff, he

has not come forward with evidence to satisfy the subjective prong of an Eighth Amend-

ment claim – that the defendants acted with a conscious disregard of a substantial risk of

serious harm to plaintiff. See Farmer, 511 U.S. at 837. The most that plaintiff has pro-

vided is his speculation that defendant Mitchell had somehow doctored plaintiff's medi-

cal records to fabricate details of his medical history. (Farid Aff't ¶¶ 48, 50) Defendant

Mitchell had noted, at one time, that plaintiff had completed the ASAT program, and, at a

later point, that plaintiff had not. (Pl. Exs. 39-48) This fact alone does not demonstrate

that defendant Mitchell acted with a level of culpability sufficient to satisfy the "con-

scious disregard" standard. Defendant Mitchell's conduct might constitute negligence,

but mere negligence is insufficient to sustain an Eighth Amendment claim.  See Estelle, 429 U.S. at 104.  Plaintiff has not alleged the involvement in the alleged fabrication of plaintiff's medical records of any individuals other than defendant Mitchell.

C.  Other Alleged Eighth Amendment Violations

Plaintiff maintains that his transfer from WCF to CCF violated DOCS policy in two respects, and thus presumably forms the basis of his fourth cause of action. First, plaintiff argues that DOCS medical guidelines prohibit transfer of inmates that are in the process of treatment for HCV.  (Farid Aff't ¶ 41)  However, these guidelines only require that such a so-called "Medical Hold" apply to patients currently receiving anti-HCV drugs, and plaintiff concedes that he was not yet receiving any drugs.  (Farid Aff't ¶ 61; Pl. Ex. 22)

Second, plaintiff asserts that he had been designated as a Central Monitoring Case ("CMC").  (Farid Aff't ¶ 42; Pl. Exs. 29-31)  Under DOCS Directive No. 0701, the DOCS Inspector General is supposed to review any proposed transfer of a CMC-designated inmate, and plaintiff argues that there was insufficient review of his proposed transfer.  See Rivera v. Senkowski, 62 F.3d 80, 82 (2d Cir. 1995).  Yet, despite having had the full opportunity of discovery, plaintiff has come forward with no evidence – other than his bare assertion – that he has been designated a CMC or that there was a lapse in administrative review of his proposed transfer.  Furthermore, none of plaintiff's voluminous correspondence with DOCS officials complaining of his lack of appropriate HCV treatment mentioned this purported fact.  (Pl. Exs. 34-38, 60-62, 71-72; Def. Ex. I)  Based on the evidence in the record, no reasonable jury could conclude that defendants violated any DOCS policy identified by plaintiff.  Even if the transfer of plaintiff from WCF to

CCF violated an internal DOCS policy, such a violation alone would not necessarily be actionable under the Eighth Amendment. Cf. Rivera, 62 F.3d at 84-85 (instructing district court to award summary judgment to defendants on plaintiff's claim that prison's policy restricting privileges and access to inmates violated the Eighth Amendment).

Plaintiff has failed to come forward with any evidence from which a reasonable jury could conclude that he has satisfied the elements of an Eighth Amendment claim. Plaintiff does not plead a separate claim based on alleged violations of state law, and he has not offered any reason why a different result would obtain under state law instead of federal law. Therefore, I grant summary judgment to the defendants on plaintiff's fourth and fifth claims.

IV.     Qualified Immunity

In their briefs, defendants assert the defense of qualified immunity. (Def. Mem. of Law at 17-22) I have already decided that plaintiff has not come forward with any evidence from which a reasonable jury could conclude that he is entitled to relief as to his first, fourth or fifth claims. Therefore, I need not reach the issue of qualified immunity for defendants on those claims. I have denied summary judgment on plaintiff's second claim based on alleged violations of the First Amendment, and I will allow the parties to address the issue of qualified immunity in any briefs that they submit on any renewed motions for summary judgment.

## CONCLUSION

For the reasons outlined above, defendants' motion for summary judgment is granted, except as to plaintiff's First Amendment claim. The plaintiff's motion for summary judgment is denied.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
        January 11, 2006